IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSEPH A. WILLIAMS,

        Plaintiff,

v.                                 Case No.: 13-cv-819-bbc

ROBERT WERLINGER,

        Defendant.

---

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

---

Defendant Robert Werlinger ("Defendant"), by his attorneys, John W. Vaudreuil, United States Attorney for the Western District of Wisconsin, and David D. Conway, Assistant United States Attorney for said district, hereby submits this reply brief in support of his motion for summary judgment for failure to exhaust administrative remedies.[1]

## INTRODUCTION

Plaintiff does not dispute that he abandoned the BOP's three-step administrative process after only the second level, or that he filed this lawsuit prematurely while his grievance was pending. Nor does he argue that his FTCA exhaustion can sustain his PLRA exhaustion obligations.

---

[1] For the Court's convenience, Defendant will use the same defined terms in this reply brief as he did in his memorandum of law in support of Defendant's motion for summary judgment for failure to exhaust administrative remedies ("Def.'s Mem."), ECF No. 58.

Instead, Plaintiff incorrectly contends that Defendant forfeited his exhaustion defense by not raising it sooner. However, Defendant had no obligation to respond to Plaintiff's claims or to assert any defenses until he was formally served. Once that happened, he filed a timely answer and then submitted this motion three weeks before the Court's deadline for doing so. Defendant's exhaustion defense is neither untimely nor grounds for waiver.

Plaintiff's oblique claim that the BOP's grievance process was somehow unavailable to him is also without merit. Plaintiff submits no sworn statements or other admissible evidence to support his vague assertions. Moreover, Plaintiff had access to the BOP's grievance process while in segregation. Indeed, he filed a BP-8, BP-9, BP-10, and this lawsuit during that time. In any event, Plaintiff's grievance, which challenged conduct occurring in December 2012, was already untimely in June 2013, when he was placed in administrative segregation. Plaintiff does not argue anything stopped him from filing a timely grievance in the six months before his segregation.

For these reasons, Defendant respectfully requests that the Court enter summary judgment in his favor and dismiss this action.

## ARGUMENT

I. **DEFENDANT HAS TIMELY ASSERTED HIS PLRA EXHAUSTION DEFENSE UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND THIS COURT'S SCHEDULING ORDER**

Plaintiff primarily argues that Defendant has "forfeited" his affirmative defense under 42 U.S.C. § 1997e(a) by not filing his motion "years ago" and instead choosing to "intentionally become a fugitive" by avoiding service of process. Pl.'s Opp. at 2-3, ECF

2

No. 62. According to Plaintiff, "years of litigation have been put forward, and the defendant had several opportunit[ies] to contest the facts, but the defendant chose to become a fugitive f[rom] justice hoping the suit would be dismissed."[2] *Id.* at 4.

To the contrary, Defendant had no obligation to respond to Plaintiff's complaint or to assert any defenses until he was served with process. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual . . . to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros. v. Michetti Pipe Stringing Inc.*, 526 U.S. 344, 350 (1999).

Here, Plaintiff acknowledges that Defendant was not served until November 4, 2015.[3] *See* Pl.'s Opp. at 2, ECF No. 62; *see also* ECF No. 54. Under the Federal Rules, Defendant had 60 days from that date to file an answer to Plaintiff's complaint. *See* Fed.

---

[2] Plaintiff repeatedly refers to Defendant as a "fugitive from justice" who somehow intentionally avoided service of process. *See* Pl.'s Opp. at 2-4, ECF No. 62. These assertions are meritless and apparently predicated on the fact that the U.S. Marshal was unable to locate Defendant during two service attempts in 2014.

[3] The Court's June 2, 2014 screening order instructed the U.S. Marshals Service to serve Defendant with process. ECF No. 15 at 13. The U.S Marshal returned service unexecuted on June 16, 2014, noting that Defendant had retired from FCI Oxford and left no forwarding address. ECF No. 19. The Court subsequently ordered the U.S. Marshal to make another attempt to serve Defendant, ECF No. 21, which also proved unsuccessful in August 2014, ECF No. 22. The Court then allowed Plaintiff time to serve Defendant himself, Order, ECF No. 23, and when he failed to do so, issued an order dismissing Plaintiff's claims on November 17, 2014, ECF Nos. 27-28. Plaintiff appealed to the Seventh Circuit Court of Appeals. ECF No. 29. On August 5, 2015, the Seventh Circuit reversed and remanded with instructions to attempt service again. ECF No. 47-1. Defendant was served on November 4, 2015. ECF No. 54.

R. Civ. P. 12(a)(3). He did so in timely fashion on January 4, 2016, asserting exhaustion as an affirmative defense. ECF No. 55 at 25. Next, under the Court's pretrial order, Defendant had until March 11, 2016, to file a summary judgment motion for failure to exhaust. ECF No. 56 at 3. He did so more than three weeks early on February 18. ECF No. 57-59. As such, Defendant has timely asserted his exhaustion defense.

Plaintiff also argues that Defendant's failure to raise exhaustion sooner is an improper "delay tactic" of the sort forbidden by the Supreme Court. Pl.'s Opp. at 2-3, ECF No. 62. However, the two decisions he relies on involved habeas petitions and have no application to the facts here. *Id.* at 3. In *Granberry v. Greer*, 481 U.S. 129, 131 (1987), the Supreme Court considered whether an appellate court has discretion to consider a habeas exhaustion defense when the State failed to raise the defense at the district court level. Likewise, in *Wainwright v. Sykes*, 433 U.S. 72, 74 (1977), the Court considered whether a prisoner's failure to properly object at trial to the admission of inculpatory statements barred federal habeas review.

Plaintiff also argues that the failure to exhaust remedies does not deprive a district court of jurisdiction and that, in some situations, the defense can be forfeited. Pl.'s Opp. at 4, ECF No. 62. Both points are correct, but neither affects the outcome here. Plaintiff relies on *Perez v. Wisconsin Department of Corrections*, 185 F.3d 532, 535-36 (7th Cir. 1999). There, the Seventh Circuit held that the failure to exhaust does not deprive a court of jurisdiction. *Id.* at 536. However, the *Perez* court also held that, when an exhaustion defense is properly raised, a court may not choose to ignore it, but instead must decide it immediately before proceeding to any substantive issues. *Id.*

4

Finally, Plaintiff misinterprets the Seventh Circuit's holding in *Fluker v. County of Kankakee*, 741 F.3d 787 (7th Cir. 2013), to mean that a district court should ignore a valid exhaustion defense and proceed to the merits if litigation has been ongoing for years. Pl.'s Opp. at 4, ECF No. 62. To the contrary, in *Fluker*, the Seventh Circuit held that where a summary judgment motion raises both a successful exhaustion defense and a successful merits argument, the district court may consider both at once and dismiss with prejudice. 741 F.3d at 791-94. Here, the Court's pretrial order avoids that situation by setting an early deadline for raising administrative exhaustion. *See* ECF No. 56 at 3.

## II. PLAINTIFF'S ADMINISTRATIVE DETENTION DID NOT RENDER HIS ADMINISTRATIVE REMEDIES "UNAVAILABLE"

Although Plaintiff concedes he filed suit prematurely and did not pursue his administrative remedies to completion, he vaguely contends in his opposition that the administrative exhaustion process was somehow unavailable to him. *See* Pl.'s Opp. at 2-3, ECF No. 62. According to Plaintiff, he was placed "in segregation without any incident report which was designed to limit his access to legal help" and to the law library. He also claims the reason for his segregation was "retaliation for the event with a friend," presumably referring to Karyl Masset, and that he was "transferred to a new prison without any violation of prison conduct." *See* Pl.'s Opp. at 3-4, ECF No. 62.

### A. The Court Should Disregard Plaintiff's Improperly Raised Assertions

The Court should disregard Plaintiff's assertions regarding his segregation. Unsworn statements made in an opposition brief are not admissible. *See, e.g., Gidarisingh v. McCaughtry*, No. 04-cv-38, 2005 WL 2428155, at *2 (E.D. Wis. Sept. 30,

5

2005) ("Submissions which are unverified and unsworn cannot be considered affidavits for purposes of summary judgment motions"). Here, Plaintiff submits no sworn affidavit testimony and cites no admissible evidence to support his statements.

Plaintiff's assertions also lack sufficient detail to withstand summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (non-moving party "must set forth *specific* facts showing that there is a genuine issue"); *see also Crymes v. N.J. Dep't of Corrections*, 09-cv-3277, 2011 WL 6756915, at *3 (D.N.J. Dec. 21, 2011) (non-moving party "must do more than just rest upon . . . vague statements"). He does not state when his segregation occurred, under what circumstances, for how long, who was responsible, or why he believes he was prevented from accessing legal resources. In fact, Plaintiff admits he had access to the BOP grievance system during segregation. Pl.'s Opp. at 2, ECF No. 62 ("Plaintiff did in fact use the administrative grievance process").

### B. Plaintiff's Administrative Remedies Were "Available"

Even if the Court considers Plaintiff's assertions, the BOP's administrative grievance process was indisputably "available" to him. The PLRA requires inmates to exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). The Seventh Circuit holds that an inmate's remedies are "unavailable" for PLRA purposes if prison employees "use[d] affirmative misconduct to prevent [him] from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citations omitted). Here, Plaintiff offers no proof of affirmative misconduct, and his administrative detention did not prevent him from accessing BOP's grievance program.

1. <u>While in Segregation, Plaintiff Had Access to the Administrative Grievance Program and Legal Resources</u>

Under BOP regulations, an inmate on administrative detention status must have "an opportunity to perform personal legal activities" and "submit a formal grievance." *Id.* § 541.31(l),(o); § 543.11(j); *see also* BOP Program Statement 1315.07 (inmates in administrative detention must have "a means of access to legal materials, along with an opportunity to prepare legal documents"). And Plaintiff, in fact, had such opportunities while in administrative detention at FCI Oxford. Plaintiff received weekly visits from his unit team, who could provide or retrieve remedy forms on request. Declaration of Michael Harris ("Harris Decl.") ¶ 3, Mar. 17, 2016. He also received mail delivery each weekday. *Id.* ¶ 3. In addition, FCI Oxford's SHU was equipped with computer access to the Electronic Law Library, which Plaintiff could access upon request. *Id.* ¶ 4.

Moreover, Plaintiff was clearly able to avail himself of the BOP's grievance procedures while in administrative detention. He successfully complied with three-quarters of them by filing BP-8 Form on October 9, 2013; a BP-9 Form on October 11; and a BP-10 Form on November 11.[4] *See* Roberts Decl. ¶¶ 14-20, Jan. 25, 2016, ECF No. 59. He also filed this lawsuit, albeit prematurely, while in administrative detention status on November 6. *See* Compl., ECF No. 1. As such, Plaintiff's detention did not prevent him from pursuing his remedies.

---

[4] Although Plaintiff does not contend otherwise, it is beyond dispute that he received the Regional Director's response because he attached a copy of it as Exhibit C to his amended complaint in this action. *See* ECF No. 14-1 at 4.

7

2.   Plaintiff's Grievance Was Already Untimely By the Time He Was Placed in Segregation

In any event, Plaintiff's grievance was already untimely by the time he was placed in administrative detention. Plaintiff's grievance and complaint challenge events occurring in December 2012. *See* Am. Compl. ¶¶ 18-20, ECF No. 14 (Massett removed from visitor list on December 9, and account frozen on December 10). Yet, Plaintiff was not placed in administrative detention until June 28, 2013. *See* Harris Decl. ¶ 1. Plaintiff does not claim that anything prevented him from filing a grievance in the six month period between the challenged events and his segregation. In fact, the BOP's grievance procedures required him to do so within "20 calendar days following the date on which the basis of the Request occurred." 28 C.F.R. §§ 542.14(a). Although Plaintiff now argues his segregation somehow prevented him from filing an untimely grievance, he does not claim anything prevented him from filing a timely one in the first place.[5]

3.   Plaintiff Identifies No Other Basis for Finding Unavailability

None of Plaintiff's other assertions show that his administrative remedies were "unavailable." First, Plaintiff cites *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004), as support for finding that his remedies were unavailable. However, in *Hemphill*, the plaintiff was repeatedly and savagely beaten by prison guards, who then threatened more beatings and false criminal charges if the plaintiff filed a grievance about their conduct. *Id.* at 684. The Second Circuit, applying an objective test, determined that

---

[5] Although the Warden and Regional Director waived Plaintiff's tardy filings in November 2013, they had no obligation to do so. *See Conveys v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) (prison officials may choose to decide an untimely grievance on the merits).

8

those circumstances may have rendered remedies unavailable. *Id.* at 688. Here, Plaintiff does not allege that anybody harmed him or threatened him with mistreatment if he filed a grievance. In fact, Plaintiff does not even claim his segregation had anything to do with his grievance activity. *See* Pl.'s Opp. at 4, ECF No. 62 (arguing segregation was due to "retaliation" for his friendship with Karyl Masset).

Second, Plaintiff references a complaint he made on December 9, 2012, but does not say what type of complaint or to whom he made it. *See* Pl.'s Opp. at 2, ECF No. 62. An off-the-cuff complaint to prison staff does not exhaust remedies. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (an inmate must "complete the administrative review process in accordance with the applicable procedural rules" of his "prison grievance process"). The BOP's records do not reflect that Plaintiff filed any formal administrative grievance until his "Urgent" complaint in May 2013, which was rejected by the Regional Director, and then his second complaint in November 2013, which he did not pursue to completion. *See* Roberts Decl. ¶¶ 9-20, Jan. 25, 2016, ECF No. 59.

Third, Plaintiff's contention that he "lacked the understanding to [raise a] complain[t] against the Warden" is also unavailing. Pl.'s Reply at 1, ECF No. 62. Ignorance about administrative grievance requirements does not excuse non-compliance. *See, e.g., Hudson v. Corizon Medical Servs.*, 557 Fed. App'x 573, 574-75 (7th Cir. 2014); *McSwain v. Schrubbe*, 382 Fed. App'x 500, 503 (7th Cir. 2010); *Twitty v. McCoskey*, 226 Fed. App'x 594, 595-96 (7th Cir. 2007). Moreover, Plaintiff had enough understanding of the PLRA grievance process to file a BP-8, BP-9, and BP-10 form in October and November 2013. *See* Roberts Decl. ¶¶ 14-20, ECF No. 59. And the

9

Regional Director's BP-10 response advised Plaintiff of his right to appeal to the Central Office and informed him how to do so. *Id.* ¶ 18, Ex. H.

Finally, Plaintiff is not free to unilaterally "remove the action outside the administrative proce[ss]" simply because he believes the agency "would not apply a fair judgment." Pl.'s Opp. at 1, ECF No. 62. The Seventh Circuit has held that the PLRA's exhaustion provision contains no futility exception. *See Perez*, 182 F.3d at 536; *Dole*, 438 F.3d at 808-09 ("Exhaustion is necessary even if the prisoner . . . believes that exhaustion is futile"). In the court's words: "No one can *know* whether administrative requests will be futile; the only way to find out is to try." *Perez*, 182 F.3d at 536.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in his favor and dismiss Plaintiff's complaint.

Dated this 17th day of March, 2016.

        Respectfully submitted,

        JOHN W. VAUDREUIL
        United States Attorney

        By:

        *s/David D. Conway*
        DAVID D. CONWAY
        Assistant United States Attorney
        222 West Washington Ave., Suite 700
        Madison, Wisconsin 53703
        Telephone: (608) 264-5158
        Facsimile: (608) 264-5724
        TTY: (608) 264-5006
        david.conway@usdoj.gov

Of Counsel:
AMY STANDEFER-MALOTT
United States Department of Justice
Federal Bureau of Prisons
Metropolitan Detention Center
71 West Van Buren
Chicago, Illinois 60605
Tel: (312) 322-0567
astandefer@bop.gov